# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# BATESVILLE DIVISION

**ANGELIA CARVALHO**                                                                **PLAINTIFF**

v.                                    No. 1:18-CV-00005-KGB-PSH

**NANCY A. BERRYHILL,**
**Deputy Commissioner for Operations,**
**performing the duties and functions**
**not reserved to the Commissioner of**
**Social Security**                                                     **DEFENDANT**

## RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## REASONING FOR RECOMMENDED DISPOSITION

Angelia Carvalho applied for social security disability benefits with an alleged disability onset date of November 15, 2014. (R. at 104). After a hearing, the administrative law judge (ALJ) denied her applications. (R. at 59). The Appeals Council denied Carvalho's request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision, and Carvalho has requested judicial review.

For the reasons stated below, the magistrate judge recommends affirming the Commissioner's decision.

**I.**     **The Commissioner's Decision**

The ALJ found that Carvalho had the severe impairments of degenerative disk disease, carpal tunnel syndrome, migraine headaches, major depressive disorder, and general anxiety disorder. (R. at 51). As a result of the impairments, the ALJ determined that Carvalho had the residual functional capacity (RFC) to perform sedentary work and could occasionally stoop, kneel, crouch, and crawl; frequently, but not constantly, use her right arm for grasping and fingering; and perform simple, routine tasks with only occasional changes in a routine work setting. (R. at 54). The ALJ took testimony from a vocational expert (VE) and determined that Carvalho could not perform her past relevant work. (R. at 57). The VE testified, however, that the RFC would allow jobs such as clerical addresser or call-out operator. (R. at 58–59). The ALJ therefore held that Carvalho was not disabled. (R. at 20).

II. **Summary of Medical Evidence**

Carvalho visited James Zini, D.O., P.A. with complaints of headaches, knee pain, fatigue, and edema in the legs on September 17, 2014. (R. at 344). Her headaches were described as constant and very severe, and she stated she took ibuprofen, which never took the pain away completely, and would also drink beer for momentary relief. (R. at 344). Dr. Zini prescribed Amitriptyline, ordered an MRI, and advised against drinking alcohol for the pain. (R. at 347). He recommended a topical cream for osteoarthritis and reducing salt intake and elevating her feet for the edema. (R. at 347).

Carvalho had an MRI of the brain on September 23, 2014 that returned normal findings. (R. at 356).

Carvalho saw Charles Varela, M.D. on November 3, 2014 complaining of bilateral knee pain. (R. at 387). Dr. Varela found full active and passive range of motion in both knees, some slight medial joint line tenderness, and positive apprehension on the left.

(R. at 387). X-rays revealed mild varus deformity with slight decreased joint space, left greater than right. (R. at 387). Dr. Varela noted possible degenerative medial meniscus tear of the left knee with the question of patellofemoral malalignment of the left knee. (R. at 387). He performed a cortisone injection of the left knee and would consider diagnostic arthroscopy and partial lateral release if pain recurred despite good response. (R. at 387).

A cervical spine CT scan on November 4, 2014 revealed mild degenerative changes at the C4–C5 level. (R. at 357).

Carvalho underwent a diagnostic arthroscopy and lateral release of her left knee on November 25, 2014. (R. at 423–26).

On January 9, 2015, Carvalho saw Dr. Zini for her headaches and back pain. (R. at 349). She reported decreasing her alcohol consumption, and Dr. Zini encouraged her to abstain. (R. at 351).

Dr. Varela performed a lateral release of her right knee on February 5, 2015. (R. at 417–20). During follow-up on February 17, 2015, Dr. Varela noted that Carvalho was doing well since her lateral release, noted degenerative arthritis of the medial compartment, and advised her on range of motion and quadriceps strengthening. (R. at 386). On April 8, 2015, Carvalho followed up with Dr. Varela concerning the lateral release of her right knee. (R. at 385). He noted slow but steady progress. (R. at 385). She complained of intermittent soreness and occasional numbness in both hands, right greater than left, and Dr. Varela planned to observe and would consider carpal tunnel release on the right side if pain continued, in spite of normal nerve conduction studies. (R. at 385).

Carvalho had a normal lumbar spine CT scan on June 17, 2015. (R. at 378).

On June 18, 2015, Dr. Varela performed carpal tunnel release to address Carvalho's complaints of pain and numbness in her right hand that was increasingly symptomatic and interfering with daily activities. (R. at 399–401).

Krishna Mylavarapu, M.D. saw Carvalho on June 30, 2015 for her migraine headaches. (R. at 360). She reported 10/10 intensity and increasing frequency and intensity as well as accompanying nausea and vomiting. (R. at 360). Dr. Mylavarapu prescribed Topamax and promethazine. (R. at 362).

Carvalho presented to Nicholas Piediscalzi, M.D. on July 6, 2015 for complaints of constant lower back pain, worse at night and with bending. (R. at 379). She reported no relief with over-the-counter medication. (R. at 379). Dr. Piediscalzi prescribed Ultram and cyclobenzaprine. (R. at 381).

During a follow-up on July 8, 2015, Dr. Varela noted that Carvalho's surgical wounds were healing fine and stated that she could progress to normal activities and follow-up as needed. (R. at 384).

Carvalho visited Robyn Sweet, R.N.P. on August 10, 2015 for back pain that had persisted for weeks and had not been responsive to muscle relaxers and pain medication. (R. at 473). An MRI on August 27, 2015 showed mild multilevel degenerative disk disease with broad-based, left central disk protrusion at L5–S1 slightly displacing the left S1 nerve. (R. at 477–78).

On November 5, 2015, Carvalho saw Abhilasha Solanki, M.D. for her chronic lower back pain. (R. at 547). She complained that her pain ranged from 5/10 to 10/10 and that at the time of the examination it was 7/10. (R. at 547). She complained of the pain radiating into her bilateral lower extremities. (R. at 547). Dr. Solanki prescribed gabapentin and continued hydrocodone. (R. at 551).

Meraj Siddiqui, M.D. performed a lumbar epidural steroid injection on November 17, 2015. (R. at 552–53).

A brain MRI on November 20, 2015 returned normal findings. (R. at 481).

Dr. Siddiqui performed a second injection on January 7, 2016, and Carvalho reported greater than fifty percent improvement from the first injection. (R. at 554–55). At a third injection, Carvalho reported fifty to sixty percent improvement since her last injection. (R. at 556–57).

On April 6, 2016, Carvalho reported mild improvement from her third injection but reported a recent fall that may have worsened her pain. (R. at 560). Dr. Solanki noted antalgic gait and station and pain upon palpation at L3–L4, L4–L5, and L5–S1. (R. at 561). Dr. Solanki increased her gabapentin and recommended diagnostic bilateral lumbar medial branch blocks. (R. at 562–63).

Carvalho visited James Allen, M.D. on April 7, 2016 for left knee pain, complaining of 9/10 pain with an aching and dull quality with maximal pain and swelling at night. (R. at 564). Dr. Allen ordered MRIs of both knees. (R. at 566). MRIs performed on April 14, 2016 revealed minimal joint effusion, possible bursitis, mild thickening of the lateral collateral complex, and grade 2 to grade 3 foci cartilage degeneration throughout the patella in the left knee. (R. at 639–40). The right knee showed mild thickening of the lateral collateral complex; mild partial thickness loss of joint cartilage in the posterior medial femoral condyle, inferior lateral patellar facet, and superior medial patellar facet; thickening of the patellar tendon at the inferior pole of the patella; and mild joint effusion. (R. at 641–42). On April 28, 2016, Carvalho visited Dr. Allen for MRI results and a plan of care. (R. at 568). Dr. Allen planned to schedule surgery. (R. at 570).

On May 4, 2016, Dr. Allen performed an arthroscopy with arthroscopic chondroplasty of the lateral facet of the patella plus lateral retinacular release of the left knee. (R. at 572–73).

Carvalho began treatment at Dayspring Behavioral Health on May 12, 2016, where she was diagnosed with major depressive disorder, recurrent episode, unspecified and generalized anxiety disorder. (R. at 495). Carvalho attended therapy on May 16, 2016 and was prescribed imipramine pamoate, Clonazepam, and Prozac. (R. at 491–92). On June 9, 2016, Carvalho discussed stressors and was said to be compliant with medical treatment. (R. at 490).

During a visit with Dr. Solanki on June 16, 2016, Carvalho stated that her back pain had not changed significantly since her last visit. (R. at 583). Dr. Solanki again increased her gabapentin and recommended diagnostic lumbar medial branch blocks. (R. at 585).

On July 8, 2016, Carvalho underwent a lumbar medial branch block. (R. at 587).

Carvalho visited Kenneth Martin, M.D. with complaints of knee pain on August 10, 2016. (R. at 634). Dr. Martin advised her regarding various treatment options. (R. at 635–36).

On September 1, 2016, Carvalho followed up with Dr. Allen after her left knee arthroscopy, stating that her pain was currently moderate and had an aching quality. (R. at 589). She was noted to be recovering and fully weight bearing. (R. at 589).

Carvalho had another lumbar medial branch nerve block on September 23, 2016. (R. at 594). She had had over eighty percent overall improvement in pain after her previous lumbar medial branch nerve block. (R. at 594).

On October 3, 2016, Carvalho had a total knee arthroplasty of the right knee. (R. at 610–12).

Carvalho attended therapy on October 18, 2016 and was found non-compliant with medication, complaining that Clonazepam made her vomit. (R. at 487). She presented with anger issues related to family problems. (R. at 488).

On October 11, 2016, Carvalho saw Dr. Allen for a postoperative visit after her right knee replacement. (R. at 617). She had no unusual complaints, was recovering at home, and was up to full weight bearing. (R. at 617). Similar findings were reported on October 20, 2016. (R. at 616).

## III. Discussion

The Court reviews to determine whether substantial evidence on the record as a whole exists to support the ALJ's denial of benefits. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence" exists where a reasonable mind would find the evidence adequate to support the ALJ's decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The Court will not reverse merely because substantial evidence also supports a contrary conclusion. *Long*, 108 F.3d at 187.

Carvalho argues that the ALJ erred by failing to include her bilateral knee osteoarthritis as a severe impairment at step two of the evaluative process and failed to include sufficient limitations in the RFC to account for her bilateral knee osteoarthritis.

Carvalho's first argument must fail as a matter of law. An ALJ does not err when he does not find an impairment severe if the ALJ sufficiently accounts for that impairment in the RFC. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R §§ 404.1545(e), 416.945(e). The crux of the issue, then, is

whether the ALJ sufficiently accounted for Carvalho's bilateral knee osteoarthritis in the RFC.

The limitations relevant to Carvalho's knee functioning are the limitations to sedentary work and occasional stooping, kneeling, crouching, and crawling. (R. at 54). She argues that the limitation to occasional stooping, kneeling, crouching, and crawling is insufficient to account for her bilateral knee osteoarthritis.

The most recent treatment record shows that Carvalho was up to full weight bearing, had mild tenderness and mild diffuse swelling, had range of motion within anticipated limits, and had flexion and extension strength grossly intact following her knee replacement. (R. at 616). She was noted as having no unusual complaints, denying changes in sensation and strength. (R. at 616).

Carvalho correctly notes that "occasional" is defined as occurring up to one third of the time. *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (S.S.A. 1983). She argues that allowing for occasional stooping, kneeling, crouching, and crawling does not adequately address the limitations she has because of her bilateral knee osteoarthritis and knee replacement. However, the record does not contain any medical evidence that she is more limited than this. As discussed above, her recovery after her knee replacement was seemingly proceeding apace, and nothing indicates that she would be unable to perform these actions less than occasionally.

Moreover, even were there such evidence, the Commissioner correctly notes that the occupations identified (*Dictionary of Occupational Titles* codes 209.587-010 and 237.367-014) by the VE and the ALJ never require stooping, kneeling, crouching, and crawling according to the *Selected Characteristics of Occupations Defined in the*

*Revised Dictionary of Occupational Titles*. Therefore, even were the ALJ to have included greater restrictions on those physical demands, those jobs would still be available. As such, Carvalho's argument must fail.

IV.     Recommended Disposition

The ALJ did not err in finding Carvalho's bilateral knee osteoarthritis to be non-severe and included sufficient limitations in the RFC to account for all of Carvalho's impairments. The ALJ's decision is supported by substantial evidence on the record as a whole and is not based on legal error. For these reasons, the undersigned magistrate judge recommends AFFIRMING the decision of the Commissioner.

It is so ordered this 13th day of November, 2018.

_____
PATRICIA S. HARRIS
UNITED STATES MAGISTRATE JUDGE